HENRY DECKER, Appellant, v. GEORGE A. DUTCHER and Another, Respondents.*

Third Department, June 25, 1936.

* Revg. 156 Misc. 488.

*Frank C. Huntington* [*O. L. Van Horne* and *Theodore P. Feury* of counsel], for the appellant.

*George L. Bockes* [*James J. Byard, Jr.,* of counsel], for the respondents.

HILL, P. J. Appeal from an order vacating a deficiency judgment in a foreclosure action. Respondents in September, 1932, executed the mortgage to appellant. There was default in interest payments and a foreclosure begun early in 1934. A judgment of foreclosure and sale containing the usual direction for the entry of a deficiency judgment was granted and entered in Otsego county clerk's office and thereafter the premises were sold. The referee reported the amount of the deficiency and his report was confirmed by an order of the Special Term held in September, 1934. The county clerk docketed the deficiency judgment on June 6, 1935.

The judgment was vacated upon the ground that an amendment to section 1083-a of the Civil Practice Act (Laws of 1934, chap. 564) nullified and in effect repealed a part of section 4 of chapter 794 of the Laws of 1933. The part of section 1083-a which was added by the amendment reads: " The provisions of section 1083-a, as amended, shall apply to all actions to foreclose mortgages on real property now pending in the courts of the State." The part of chapter 794 (Laws of 1933) which the court has held to be repealed reads: " This act shall not apply to mortgages dated on or after July first, nineteen hundred thirty-two, or to any bond, collateral bond, guarantee, or extension agreement or other agreement or writing concerning or delivered in connection with any indebtedness secured by a mortgage dated on or after July first, nineteen hundred thirty-two."

Sections 1083-a and 1083-b of the Civil Practice Act were enacted by section 2 of chapter 794 of the Laws of 1933. They have to

do with the amount and the entry of deficiency judgments in foreclosure actions and with actions upon bonds secured by mortgages upon real estate. Because of the limitation contained in section 4 of the chapter, the new sections did not apply to mortgages dated on and after July 1, 1932. Section 1 of the chapter declared the existence of a public emergency. · Section 4 fixed the period of the emergency from the date of the act to July 1, 1934, and also enacted as above quoted concerning the mortgages to which the emergency applied. The Court of Appeals, in passing upon the constitutionality of these sections of the Civil Practice Act, has said: " That such legislation, reasonably seeking only temporary relief, is not unconstitutional, we may refer to our recent decision in *Matter of People* (*Title & Mortgage Guarantee Co. of Buffalo*) (264 N. Y. 69), and *Home Building & Loan Assn.* v. *Blaisdell* (290 U. S. 398)." (*Klinke* v. *Samuels*, 264 N. Y. 144, 149.) The authorities cited in the above quotation sustain the constitutionality of these acts because of the power of the Legislature in an emergency to abrogate contract rights and provisions to a reasonable extent as it deems necessary for the public good. The reason for and the reasonableness of not including mortgages dated after July 1, 1932, is obvious. The depression which led to the emergency began late in 1929 and the Legislature believed that the low point was reached about July 1, 1932. Property values had decreased markedly from 1929 to that date. To permit mortgagees to force the sale of real property in an unstable market and then to enter as a deficiency the wide margin between the low selling price and the face of the mortgage placed when values were much higher, was deemed by the Legislature to be unfair to the debtor and that it would create a danger to the economic welfare and the best interests of the community. To prevent this the moratorium was declared. As to mortgages executed on and after July 1, 1932, the same logic did not apply. Real estate values were then at their lowest ebb. Borrower and lender were dealing under economic conditions that had not changed. Mortgages then negotiated were not ordinarily for an amount in excess of the value of the property upon which they were a lien.

The Legislature did not declare a general emergency as to all contracts under which money was payable. If the emergency required, doubtless it could have enacted that the grocer, the tailor, the merchant, should not recover judgments against delinquent debtors. A moratorium could have been declared as to money borrowed upon promissory notes. This was not done. The moratorium was limited to mortgages on real estate and the bonds secured thereby that were negotiated before July 1, 1932, the low point in the depression. Thus by the enactment in 1933, sections

1083-a and 1083-b did not affect in any way mortgages negotiated after July 1, 1932. That the Legislature intended to limit the application of these sections is shown by subsequent legislation. Chapter 277 of the Laws of 1934 amended sections 1 and 4 of chapter 794 of the Laws of 1933 only to the extent that the emergency was declared to continue an additional year to July 1, 1935. Again, by chapter 2 of the Laws of 1935, the same sections of the 1933 chapter were amended by declaring that the emergency should be regarded as continuing until July 1, 1936. The amendment to section 1083-a relied upon in the court below was enacted by chapter 564 of the Laws of 1934. The section was amended again as to phraseology by chapter 268 of the Laws of 1935. Neither of these amendments affects or changes the limitation contained in section 4 of chapter 794 of the Laws of 1933. The moratorium did not extend to mortgages on real estate executed after July 1, 1932, any more than it did to chattel mortgages executed at any time. Deficiency judgments in foreclosure actions on mortgages made after that date do not come within the purview and are not affected by the two new sections of the Civil Practice Act. There can be no conflict between section 1083-a of the Civil Practice Act and section 4 of chapter 794 of the Laws of 1933, for the latter limits and circumscribes the application of the former.

The order vacating the judgment should be reversed on the law, with ten dollars costs, and the motion to vacate the judgment denied, with ten dollars costs, and the judgment of June 6, 1935, reinstated.

McNAMEE and HEFFERNAN, JJ., concur; RHODES, J., dissents, with a memorandum; BLISS, J., dissents, with a memorandum.

RHODES, J. (dissenting). It seems to me that the Moratorium Laws are procedural, in so far as the question before us is concerned. They do not deprive the mortgagee of his right to a deficiency judgment, but they enact a change in procedure for the determination of such deficiency. By the original act, chapter 794 of the Laws of 1933, it was provided that it should not apply to mortgages dated on or after July 1, 1932. The mortgage in question was dated September 7, 1932, and thus the procedure outlined in the original statute had no application thereto.

By chapter 277 of the Laws of 1934 the Legislature continued the moratorium provisions, including the procedure for obtaining a deficiency judgment. Later in the session, by chapter 564 of the Laws of 1934, it was provided, among other things, that the provisions of section 1083-a, as amended, *shall apply to all actions to foreclose mortgages* on real property now pending in the courts of this State.

This action was then pending because it was commenced on or about the 23d day of January, 1934.

Section 4 of the original enactment still remained, which provided that the act shall not apply to *mortgages* dated on or after July 1, 1932. It is significant that the language of the later act, chapter 564 of the Laws of 1934, section 2, provides that it shall apply to all actions to *foreclose* mortgages now pending in the courts of this State. I think the two provisions can be harmonized by construing them to mean that while they shall not apply to mortgages dated on or after July 1, 1932, where no action to foreclose the same was then pending, they shall apply to such mortgages if an action to foreclose the same had been brought theretofore and was then pending.

I think it may with plausibility be argued that it was the thought of the Legislature that although the emergency still existed its severity had ameliorated to such an extent that as to all actions subsequently brought the provisions of the statute should not apply, but that as to those then pending it should have application.

Furthermore, if the *procedure* in question was not to apply to mortgages dated after July 1, 1932, there was absolutely no reason which I can discover for the provisions of chapter 564 of the Laws of 1934 that section 1083-a shall apply to all pending actions.

In addition to the reasons discussed by the court below, this being an equity action, the plaintiff should be governed by equitable principles. It appears that when the foreclosure action was brought, defendants' attorney was assured in behalf of plaintiff that no deficiency judgment would be sought. Lulled by this assurance defendants' attorney did not further contest the action.

It may be that irrespective of the moratorium laws the defendants could have interposed facts which in equity would have precluded the plaintiff from recovering any deficiency judgment.

It appears from the record that it has been judicially determined that the defendants were induced to purchase the property in question by fraud on the part of the plaintiff, and that the mortgage was given pursuant to a bargain into which defendants were thus fraudulently lured.

In the transaction defendants traded their home which thus came into the possession of plaintiff, and they have in addition lost the farm and the stock which they purchased in reliance upon plaintiff's fraud.

Upon all the facts the order vacating the deficiency judgment should be affirmed, with ten dollars costs and disbursements.

BLISS, J. (dissenting). I dissent from the opinion of our Presiding Justice. Chapter 564 of the Laws of 1934 specifically states that the provisions of section 1083-a, as amended, shall apply to *all* actions to foreclose mortgages on real estate *now* pending in the courts of this State. It is true that chapter 794 of the Laws of 1933, effective August 28, 1933, which first enacted section 1083-a, provided that such act should not apply to mortgages dated on or after July 1, 1932, and that the same provision was included in chapter 277 of the Laws of 1934, which extended the emergency. However, at a later date, namely, on May 12, 1934, a new law subsequently enacted as chapter 564 of the Laws of 1934 provided that section 1083-a, as amended, should apply to all actions then pending. Unless we construe this statute as meaning exactly what it says, I cannot see how it has any meaning or any application. I, therefore, dissent and vote to affirm the order appealed from.

Order reversed on the law, with ten dollars costs and disbursements, and motion to vacate judgment denied, with ten dollars costs, and the judgment of June 6, 1935, reinstated.